IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUSSELL UPKY,

        Plaintiff,

vs.                                                                                    No. CIV 13-0553 JB/GBW

WAYNE LINDSEY, M.D.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Wayne Lindsey, M.D.'s Motion to Vacate Trial Setting, filed February 3, 2015 (Doc. 45)("Motion"). The Court held a hearing on April 7, 2015. The primary issue is whether the Court should vacate the June 15, 2015, trial setting and set the trial for a later date. The Court will grant the Motion, but not for the reasons that Defendant Wayne Lindsey sets forth in the Motion. Lindsey fails to show good cause to vacate the trial setting; however, because the Court cannot provide the parties a firm trial setting for the week of June 15, 2015, the Court will vacate the trial setting and will set the trial to begin on June 22, 2015.

## FACTUAL BACKGROUND

The Court takes the facts from the Complaint for Medical Negligence Resulting in Personal Injury, filed June 14, 2013 (Doc. 1)("Complaint"). In December, 2008, Plaintiff Russell Upky "was seen at Las Cruces Orthopaedic Associates for an injury to his left shoulder which had resulted in a full thickness rotator cuff tear." Complaint ¶ 4, at 1. Upky was unable to have surgery to repair the tear in December, 2008, because of "unrelated medical problems." Complaint ¶ 4, at 1. In May, 2010, Upky "agreed to undergo surgery at the Las Cruces Surgical

Center as an out-patient for the rotator cuff tear and related problems."  Complaint ¶ 5, at 1-2. He "was reported to be doing very well" post-operatively and was scheduled to begin physical therapy in June, 2010, but on June 22, 2010, he was "seen and admitted to Mountain View Regional Medical Center in Las Cruces, New Mexico, by Defendant Lindsey," because he had "been suffering increasing problems with the shoulder including recent drainage, pain, swelling and fever."  Complaint ¶¶ 5-7, at 2.  Upky had "drainage from the surgical site which had tested positive for staph infection," and a "CT scan of the left shoulder on June 22, 2010[,] confirmed that he had an abscess accompanied with septic joint and suspected osteomyelitis in the shoulder."  Complaint ¶¶ 6-7, at 2.

Lindsey "knew or should have known that the condition present on June 22, 2010, required urgent care and treatment[,] including immediate surgical decompression and operation to address the septic infection in his shoulder," and further that Upky "required an infectious disease consultation and management of his left shoulder for the infection."  Complaint ¶ 9, at 2. Instead of performing surgery immediately, however, Lindsey waited until June 23, 2010, to perform the "arthroscopic incision and debridement of the left shoulder."  Complaint ¶ 10, at 2. Lindsey's "failures constitute medical negligence . . . as a matter of law."  Complaint ¶¶ 9-10, at 2.

Upky required follow-up care with Dr. Daniel Romanelli during the following months, during which time Upky "continued to experience severe and debilitating problems given that his shoulder infection had not been timely and appropriately treated."  Complaint ¶ 11, at 2-3. "Ultimately the mistreated and untreated shoulder infection required removal of all the medical devices ('hardware') which had been surgically implanted in Mr. Upky's body."  Complaint ¶ 12, at 3.  Upky "has been left with a full thickness tear of the shoulder and, as a result, suffers

and will continue to suffer from a permanently torn and irreparable left rotator cuff."  Complaint ¶ 12, at 3.

## PROCEDURAL BACKGROUND

Upky filed suit on June 14, 2013, alleging that Lindsey was negligent in performing surgery on and repairing his shoulder.  See Complaint ¶ 13, at 3.  The Court set trial for June 15, 2015, in Albuquerque, New Mexico.  See Scheduling Order at 2, filed September 2, 2014 (Doc. 24)("Scheduling Order").  Lindsey filed the Motion on February 3, 2015.  See Motion at 1.

Lindsey requests, under to rule 16 of the Federal Rules of Civil Procedure, that the Court vacate the June 15, 2015, trial date and reset the trial for a later date.  See Motion at 1.  Lindsey asserts that rule 16(b)(4) permits a court to modify a scheduling order for good cause, which he asserts exists in this case, because his standard-of-care expert, Dr. Thomas Carlsen, will be unavailable the week of June 15.  See Motion at 2-3.  Lindsey contends that he contacted Dr. Carlsen in August, 2014, and that, on December 4, 2014, provided him with case materials to review.  See Motion at 2-3.  Lindsey states that, on December 23, 2014, Dr. Carlsen informed him that he would not be available to travel to Albuquerque during the week of June 15, 2015, because he had a previous commitment.  See Motion at 3.  Lindsey argues that, because he did not have sufficient time to find a new standard of care expert before the January 15, 2015, expert disclosure deadline, he disclosed Dr. Carlsen as an expert witness.  See Motion at 3.

Lindsey asserts that, because Dr. Carlsen has essential expert opinions that he is entitled to present to the jury through live testimony, there is good cause for the Court to vacate the trial date.  See Motion at 3.  Lindsey contends that the good-cause standard focuses primarily on the diligence of the party seeking the amendment, and that the moving party must show that he or she could not have reasonably met the scheduled deadlines, despite all due diligence.  See

Motion at 3 (citing <u>Deghand v. Wal-Mart Stores, Inc.</u>, 904 F. Supp. 1218, 1220 (D. Kan. 1995) (Crow, J.); <u>Street v. Curry Bd. of Cnty. Comm'rs</u>, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.)).  Lindsey maintains that he was diligent in retaining Dr. Carlsen, in notifying Upky, and in filing the Motion.  <u>See</u> Motion at 4.  Lindsey asserts that he disclosed Dr. Carlsen's conflict in Dr. Carlsen's report and that he filed the Motion nineteen days after filing Dr. Carlsen's expert report.  <u>See</u> Motion at 4.  Lindsey argues that Dr. Carlsen is an essential witness in the case and that he will be unfairly prejudiced if he is required to rely on videotaped deposition testimony to show Dr. Carlsen's opinions to the jury. <u>See</u> Motion at 4.

Upky responded to the Motion on February 16, 2015.  <u>See</u> Response in Opposition to Defendant Wayne Lindsey's Motion to Vacate Trial Setting (Document No. 45), filed February 16, 2015 (Doc. 46)("Response").  Upky contends that Lindsey's sole reason for vacating the trial setting is that Dr. Carlsen has prior travel plans and is not available to travel to Albuquerque to testify.  <u>See</u> Response at 1.  Upky argues that "[t]his is, at best, a poor excuse."  Response at 1. He asserts that he filed the Complaint almost two years earlier and that the Court entered default judgment on December 9, 2013, which the Court set aside on September 15, 2014.  <u>See</u> Response at 1-2.  Upky contends that, on September 2, 2014, the Court entered an order adopting the parties' discovery plan and that, at the initial scheduling conference, the Court proposed for trial to be held in April, 2015, but, because Lindsey's counsel would be unavailable that month, the parties stipulated, and the Court agreed, to schedule the trial for June 15, 2015.  <u>See</u> Response at 2.  Upky argues that Lindsey's counsel has known for ten months that the case would go to trial in June, 2015.  <u>See</u> Response at 2.

Upky contends that Lindsey is asking for more delays, and for the Court and the attorneys to readjust their schedule, because his expert is too busy, but he has not offered "a shred of evidence as a good faith basis in support of this argument." Response at 2. Upky asserts that, when a party retains an expert, and pays him or her tens of thousands of dollars to testify, "the expert cannot and should not expect that the parties and the Court will delay because the expert finds the trial schedule inconvenient." Response at 2.

Upky argues that <u>Deghand v. Wal-Mart</u> does not help Lindsey's position, because that case involved the plaintiff not knowing an additional witness' true identity, because of the defendant's conduct. <u>See</u> Response at 2-3. Upky contends that <u>Street v. Curry Board of County Commissioners</u> is also inapplicable, because, there, the Court considered whether to allow a plaintiff to amend her complaint when she adequately explained and uncovered evidence that formed the basis of her new complaint. <u>See</u> Response at 3. Upky maintains that Lindsey contacted Dr. Carlsen in August, 2014, and that it was up to Lindsey's counsel to immediately notify Dr. Carlsen of the trial date. <u>See</u> Response at 3. Upky argues that the Court showed Lindsey great latitude in setting aside the entry of default and even more latitude in acceding to Lindsey's request for the trial to be put off until June, 2015. <u>See</u> Response at 4. Upky asserts that "[e]nough is enough." Response at 4. Upky maintains that, if Dr. Carlsen is unable to travel to Albuquerque in person, his testimony can be taken, preserved, and presented to the jury. <u>See</u> Response at 4.

Lindsey replied on March 2, 2015. <u>See</u> Defendant Wayne Lindsey, M.D.'s Reply in Support of Motion to Vacate Trial Setting, filed March 2, 2015 (Doc. 47)("Reply"). Lindsey asserts that he has established good cause, because Dr. Carlsen cannot appear in person to testify at trial. <u>See</u> Reply at 1. Lindsey contends that, on December 23, 2014, Dr. Carlsen informed

Lindsey's counsel that he had already committed to participate in a golf tournament from June 15, 2015, to June 19, 2015.  See Reply at 1.  Lindsey states that he did not discuss the trial date with Dr. Carlsen until the December 23, 2014, telephone call.  See Reply at 2.  Lindsey argues that, from December 23, 2014, he had three weeks until the January 15, 2015, deadline for disclosing witnesses.  See Reply at 1-2.  Lindsey maintains that three weeks was not enough time to locate a new standard-of-care expert, so he disclosed Dr. Carlsen as his expert witness on January 15, 2015, and informed Upky of Dr. Carlsen's conflict in Dr. Carlsen's report.  See Reply at 2.

Lindsey contends that both Deghand v. Wal-Mart Stores, Inc. and Street v. Curry Board of County Commissioners support the proposition that a party who moves to change a scheduling deadline must show that he or she cannot meet the deadline despite due diligence.  See Reply at 2.  He maintains that he used due diligence in retaining Dr. Carlsen, in discussing the trial setting with Dr. Carlsen, in disclosing the conflict with Upky, and in filing the Motion.  See Reply at 3.

Lindsey attached to the Reply an affidavit by Dr. Carlsen.  See Affidavit of Thomas J. Carlsen, M.D. (dated February 27, 2015), filed March 2, 2015 (Doc. 47)("Carlsen Aff.").  Dr. Carlsen states that, during a telephone conference with Lindsey's counsel, he informed them that he could not travel to Albuquerque the week of June 15, 2015.  See Carlsen Aff. ¶ 4, at 5.  Carlsen states that he will participate in an amateur golf tournament at the Pine Valley Golf Club in New Jersey that week and that he had to commit to participating in the tournament by early December, 2014.  See Carlsen Aff. ¶ 5, at 5.  Dr. Carlsen states that he cannot change his plans to play in the tournament, which means that he cannot be in Albuquerque to testify the week of June 15, 2015.  See Carlsen Aff. ¶ 5, at 5.

The Court held a hearing on April 7, 2015.  See Transcript of Hearing (taken Apr. 7, 2015)("Tr.").[1]  The Court began the hearing by telling the parties that this case was the fourth civil case in line on the Court's trailing docket on June 15, 2015, which also includes a number of criminal cases above all of the civil cases, but that it might be able to give the parties a firm trial setting.  See Tr. at 2:13-5:1 (Lyle, Clerk, Court).  Both parties agreed that a firm setting would be useful.  See Tr. at 5:2-9 (Lyle, Lawrenz, Court).

Lindsey stated that he discussed with Upky the possibility of conducting a videotape deposition, but that Upky wanted Lindsey to pay for the cost of his counsel attending the deposition, to which Lindsey was opposed.  See Tr. at 5:15-22 (Lawrenz).  Upky argued that he should not have to pay for his attorney's expenses merely because Lindsey's expert had a golf tournament.   See Tr. at 6:8-12 (Lyle).   Lindsey stated that Dr. Carlsen attending a golf tournament "is not a strong reason to move to vacate," but that he is prejudiced by not having live testimony.  Tr. at 6:13-18 (Lawrenz).  Lindsey noted that he considered withdrawing the Motion, because "there is no better time this year for us to do this case, so we're happy keeping it in June" if he could use a videotape deposition.  Tr. at 6:18-24 (Lawrenz).  Lindsey stated that, after some research, he determined that Upky is entitled to costs and some payment for time for the deposition, and that he is willing to pay if it is a reasonable amount.  See Tr. 6:24-7:2 (Lawrenz).  At this point, Upky interrupted Lindsey to clarify that he is not asking for attorney's fees, but only for travel costs and for a copy of the deposition.  See Tr. at 7:3-8 (Lyle).  Lindsey said that he was agreeable to those terms.  See Tr. at 7:9-11 (Lawrenz, Court).

The Court informed the parties that it could not set a firm trial date on the week of June 15, 2015, through June 19, 2015, but that it could provide them with a firm trial setting either the

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

week before or the week after.  <u>See</u> Tr. at 7:18-8:1.  After discussing the parties' availability, the Court scheduled a firm trial date for the week of June 22, 2015, through June 26, 2015.  <u>See</u> 8:2-9:19 (Lyle, Lawrenz, Court).

<u>**RELEVANT LAW REGARDING SCHEDULING ORDERS**</u>

"The District Court has wide discretion in its regulation of pretrial matters."  <u>Si–Flo, Inc. v. SFHC, Inc.</u>, 917 F.2d 1507, 1514 (10th Cir. 1990).  Under to rule 16 of the Federal Rules of Civil Procedure, a district judge must issue a scheduling order, and the judge is permitted to set a trial date as part of the scheduling order.  <u>See</u> Fed. R. Civ. P. 16(b)(3)(B)(v).  Scheduling orders "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4). <u>Accord</u> <u>Street v. Curry Bd. of Cnty. Comm'rs</u>, 2008 WL 2397671, at *6. The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.  Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.  The Court has stated: "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  <u>Street v. Curry Bd. of Cnty. Comm'rs</u>, 2008 WL 2397671, at *6.

Other courts within the United States Court of Appeal for the Tenth Circuit have held that "the good cause standard primarily considers the diligence of the party.  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  <u>Pulsecard, Inc. v. Discover Card Servs. Inc.</u>, 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfel, M.J.)(alterations omitted)(internal quotation marks omitted).  In the United States

District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  <u>Kee v. Fifth Third Bank</u>, No. CIV 06-00602 DAK/PMW, 2008 WL 183384, at *1 (Jan. 17, 2008 D. Utah)(Kimball, J.).  Judge Kimball reasoned: "In light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  2008 WL 183384, at *1.

<u>**ANALYSIS**</u>

The Court will grant the Motion, but not for the reasons stated in the Motion.  In the Motion, Lindsey requests the Court to vacate the trial date and reschedule for a later date, because Dr. Carlsen cannot attend the trial setting because of a golf tournament.  Lindsey does not argue that refusing to vacate the trial date would completely preclude the admission of Dr. Carlsen's testimony, but only that it would require him to rely on a videotaped deposition. At the hearing, Lindsey conceded that this was not a strong reason to vacate the trial setting.  <u>See</u> Tr. at 6:13-18 (Lawrenz).  The Court agrees that it is not a strong reason.

While a videotaped deposition is not always ideal, it is a regular practice for civil trials that can be very effective.  The prejudice facing Lindsey, thus, is not so severe that it will significantly affect his case.  Indeed, some proponents of an expert prefer videotaping the cross-examination before trial; some cross-examiners do not like to take an expert's deposition or do not like to show their full array of questions at a deposition.  When a deposition is taken as a trial deposition, the cross examiner cannot hold back, because the deposition is the show.  The proponent knows exactly what is going to happen and can even edit the deposition to present only what he or she wants.  It can be a precise, well-produced presentation.  Thus, not only is a

deposition not very prejudicial, it is sometimes helpful to the proponent.  This is not to say that juries or courts prefer videotaped depositions over live testimony, see, e.g., InfoMC, Inc. v. Comprehensive Behavioral Care, Inc., No. CIV 10-4907, 2012 WL 1114360, at *17 (E.D. Pa. Mar. 30, 2012)(Slomsky, J.)("[I]t is well recognized that live testimony is preferred over videotaped depositions or other means of presenting evidence."  (citing Gore v. Stryker Corp., No. CIV 09-2987, 2010 WL 3069653, at *5 (E.D. Pa. Aug. 4, 2010)(Slomsky, J.); Copley v. Wyeth, Inc., No. CIV 09-0722, 2009 WL 2160640, at *5-6 (E.D. Pa. July 17, 2009)(Pratter, J.); Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004)(Thrash, J.))); Dorthy K. Kagehiro, Jurors Keenly Assess Experts' Credibility: Lawyers Try to Bolster a Jury's Perception of These Crucial Witnesses, Nat'l L. J., Nov. 5, 2001, at B14 ("Jurors strongly prefer live testimony to videotaped deposition testimony.  It is far more difficult for jurors to pay attention to a videotaped 'talking head' -- and attention is necessary for comprehension." (footnote omitted)), but only that videotaped depositions can be effective tools if used properly, which significantly decreases any prejudice that Lindsey may face.

Moreover, Lindsey's failure to discover Dr. Carlsen's conflict appears to be solely because of Lindsey's lack of diligence.  The Court entered the Scheduling Order on September 2, 2015, informing the parties of the trial date.  Lindsey failed, however, to inform Dr. Carlsen of the trial date until December 23, 2015.  See Reply at 3 ("Dr. Lindsey first discussed the date of the trial setting during the phone call with Dr. Carlsen on December 23, 2014").  When Lindsey finally informed Dr. Carlsen of the trial date and learned of Dr. Carlsen's unavailability, rather than immediately requesting the Court to extend the expert witness deadline to give him time to secure another expert, Lindsey stayed with Dr. Carlsen, and, on January 15, 2015, disclosed Dr. Carlsen as an expert witness.  Lindsey noted, in Dr. Carlsen's report, that Dr. Carlsen was

unavailable for the trial date, but instead of asking the Court to permit him to retain a new expert, two weeks later, Lindsey asked the Court to vacate the trial setting.

Lindsey has not shown that he took any steps to retain a new expert between the time he discovered that Dr. Carlsen was unavailable and the date he filed the Motion. During those five weeks, it appears that Lindsey either was certain that the Court would grant the Motion or decided that he would rather use a videotaped deposition than conduct the necessary due diligence to retain a new expert. Moreover, Lindsey found himself in this predicament because he failed to inform Dr. Carlsen of the trial date until three weeks before the expert disclosure deadline. Because Lindsey has a viable option to present Dr. Carlsen's testimony -- videotaped deposition -- and because Lindsey has not shown that he exercised due diligence in attempting to retain a new expert or in timely informing Dr. Carlsen of the trial date, the Court concludes that Lindsey's proffered reasons for why the Court should grant the Motion are inadequate.

For the reasons stated at the hearing, however, the Court will grant the Motion. The parties in a civil case prefer, as here, a firm setting rather than a trailing docket, which makes getting subpoenas and calling witnesses more difficult. Because of the Court's other cases, the Court cannot guarantee the parties a firm trial setting for June 15, 2015, and the parties are unavailable the week of June 8, 2015. See Tr. at 7:12-8:24 (Lyle, Lawrenz, Court). Upon the parties' agreement, the Court will vacate the trial setting and will set trial to begin on June 22, 2015.

**IT IS ORDERED** that (i) Defendant Wayne Lindsey, M.D.'s Motion to Vacate Trial Setting, filed February 3, 2015 (Doc. 45), is granted; (ii) and the trial is set for June 22, 2015.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James P. Lyle
Law Offices of James P. Lyle P.C.
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

William P. Slattery
Zachary T. Taylor
Hinkle Shanor LLP
Santa Fe, New Mexico

     *Attorneys for the Defendant*