# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUSSELL UPKY,

        Plaintiff,

vs.                                                                          No. CIV 13-0553 JB/GBW

WAYNE LINDSEY, M.D.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) Defendant Wayne Lindsey, M.D.'s Motion in Limine Regarding Evidence of Prior Claims, filed March 30, 2015 (Doc. 53)("Lindsey MIL"); (ii) the Motion in Limine No. 1, filed March 30, 2015 (Doc. 54)("Upky MIL No. 1"); (iii) the Motion in Limine No. 2, filed March 30, 2015 (Doc. 55)("Upky MIL No. 2"); and (iv) the Motion in Limine No. 3, filed March 30, 2015 (Doc. 56)("Upky MIL No. 3"). The Court held a hearing on May 13, 2015. The primary issues are: (i) whether Plaintiff Russell Upky may introduce evidence that Defendant Wayne Lindsey, M.D., has been a defendant in other lawsuits or that other patients have raised complaints about Lindsey; (ii) whether Lindsey may introduce evidence that Upky's expert witness has been sued for medical malpractice; (iii) whether Lindsey may ask potential jurors hypothetical questions during voir dire; and (iv) whether the Court should prohibit Lindsey from discussing insurance and the effect that ligation has on the availability of healthcare. As long as Lindsey does not testify as an expert witness, evidence of other lawsuits is not relevant for a proper purpose and should be excluded. Upky's expert witness, however, places his credibility, competency, and experience at issue when giving expert testimony. Lindsey, therefore, may introduce evidence that Upky's expert has been personally

sued for medical malpractice.  Some hypothetical questions are permissible during voir dire, as long as they do not require the jury to commit to a certain outcome.  Because the Court does not know what questions Lindsey may ask, the Court will order both parties to file their proposed voir dire questions with the Court, so that the other side may object to specific questions.  Finally, both sides agree that they should not mention insurance or the effect of litigation on healthcare availability.  Accordingly, the Court will: (i) grant the Lindsey MIL; (ii) deny the Upky MIL No. 1 without prejudice to renew at trial; (iii) grant in part and deny in part the Upky MIL No. 2; and (iv) grant the Upky MIL No. 3.

## FACTUAL BACKGROUND

The Court takes the facts from the Complaint for Medical Negligence Resulting in Personal Injury, filed June 14, 2013 (Doc. 1)("Complaint").  In December, 2008, Upky "was seen at Las Cruces Orthopaedic Associates for an injury to his left shoulder which had resulted in a full thickness rotator cuff tear."  Complaint ¶ 4, at 1.  Upky was unable to have surgery to repair the tear in December, 2008, because of "unrelated medical problems."  Complaint ¶ 4, at 1.  In May, 2010, Upky "agreed to undergo surgery at the Las Cruces Surgical Center as an out-patient for the rotator cuff tear and related problems."  Complaint ¶ 5, at 1-2.  He "was reported to be doing very well" post-operatively and was scheduled to begin physical therapy in June, 2010, but on June 22, 2010, he was "seen and admitted to Mountain View Regional Medical Center in Las Cruces, New Mexico, by Defendant Lindsey," because he had "been suffering increasing problems with the shoulder including recent drainage, pain, swelling and fever."  Complaint ¶¶ 5-7, at 2.  Upky had "drainage from the surgical site which had tested positive for staph infection," and a "CT scan of the left shoulder on June 22, 2010[,] confirmed

that he had an abscess accompanied with septic joint and suspected osteomyelitis in the shoulder."  Complaint ¶¶ 6-7, at 2.

Lindsey "knew or should have known that the condition present on June 22, 2010, required urgent care and treatment[,] including immediate surgical decompression and operation to address the septic infection in his shoulder," and further that Upky "required an infectious disease consultation and management of his left shoulder for the infection."  Complaint ¶ 9, at 2. Instead of performing surgery immediately, however, Lindsey waited until June 23, 2010, to perform the "arthroscopic incision and debridement of the left shoulder."  Complaint ¶ 10, at 2. Lindsey's "failures constitute medical negligence . . . as a matter of law."  Complaint ¶¶ 9-10, at 2.

Upky required follow-up care with Dr. Daniel Romanelli during the following months, during which time Upky "continued to experience severe and debilitating problems given that his shoulder infection had not been timely and appropriately treated."  Complaint ¶ 11, at 2-3. "Ultimately the mistreated and untreated shoulder infection required removal of all the medical devices ('hardware') which had been surgically implanted in Mr. Upky's body."  Complaint ¶ 12, at 3.  Upky "has been left with a full thickness tear of the shoulder and, as a result, suffers and will continue to suffer from a permanently torn and irreparable left rotator cuff."  Complaint ¶ 12, at 3.

## PROCEDURAL BACKGROUND

Upky filed suit on June 14, 2013, alleging that Lindsey was negligent in performing surgery on and repairing his shoulder.  See Complaint ¶ 13, at 3.  On March 30, 2015, both parties filed a total of four motions in limine.  The Court will address each in turn.

1.      **The Lindsey MIL.**

Lindsey filed the Lindsey MIL on March 30, 2015.  See Lindsey MIL at 1.  Lindsey argues that the Court should prohibit Upky from introducing evidence of prior malpractice lawsuits against Lindsey, prior New Mexico Medical Review Commission claims against Lindsey, and any other complaints or claims that are related to Lindsey's practice of medicine. See Lindsey MIL at 1.  Lindsey asserts that any prior claims, lawsuits, or complaints against him are not relevant, and would constitute improper character evidence.  See Lindsey MIL at 1-2. Lindsey contends that evidence of prior claims fails the first two factors from Huddleston v. United States, 485 U.S. 681 (1988), for the admissibility of evidence under rule 404(b) of the Federal Rules of Evidence: that the proponent must offer the evidence for a proper purpose and that the evidence must be relevant.  See Lindsey MIL at 2.  He argues that, because evidence that he was negligent in other cases in different circumstances is irrelevant to this case, Upky cannot introduce the evidence for a proper purpose.  See Lindsey MIL at 3.  Lindsey maintains that Upky has not argued that he could not introduce prior claims to establish Lindsey's knowledge of a dangerous condition or a dangerous practice.  See Lindsey MIL at 3 (citing Wheeler v. John Deer Co., 862 F.2d 1404, 1407 (10th Cir. 1988)).

Lindsey contends that, in Ohlson v. Kent Nowlin Construction Co., 1983-NMCA-008, 660 P.2d 1021, the Court of Appeals of New Mexico held that prior acts of negligence are irrelevant to proving that a defendant was negligent on a particular occasion.  See Lindsey MIL at 3.  Lindsey argues that, even if the evidence has some relevance, the Court should exclude it under rule 403 of the Federal Rules of Evidence, because the danger of unfair prejudice substantially outweighs its probative value.  See Lindsey MIL at 304.  He argues that the evidence has low probative value and that it would mislead the jury, which may give it undue

weight.  <u>See</u> Lindsey MIL at 4.  Lindsey further argues that evidence of prior claims and lawsuits would mislead or confuse the jury, because a significant portion of the trial would be spent examining him about the prior claims and the circumstances surrounding them.  <u>See</u> Lindsey MIL at 4.

Upky responded on April 13, 2015.  <u>See</u> Plaintiff's Response in Opposition to Defendant Wayne Lindsey's Motion in Limine Regarding Evidence of Prior Claims, filed April 13, 2015 (Doc. 63)("Lindsey MIL Response").  Upky asserts that Lindsey will testify about his treatment and care of Upky.  Lindsey MIL Response at 1.  Upky also asserts that Lindsey has retained two physicians to testify as expert witnesses about the standard of care with which a physician should act.  <u>See</u> Lindsey MIL Response at 1.  Upky argues that, if evidence of prior claims and lawsuits is inadmissible against Lindsey, it should be inadmissible against every witness.  <u>See</u> Lindsey MIL Response at 2.

Upky contends that Lindsey will testify about "his medical training, education and experience in an effort to engender himself to the jury," and that he will testify why, from his professional standpoint, he treated Upky in the way he did.  Lindsey MIL Response at 2.  Upky argues that his medical expert will also explain, from his professional standpoint, why Lindsey's conduct was unreasonable.  <u>See</u> Lindsey MIL Response at 2.  Upky contends that both his expert's testimony and Lindsey's testimony should be subject to cross examination on prior medical negligence claims or neither should be subject to such cross examination.  <u>See</u> Lindsey MIL Response at 2.  Upky argues that, for the reasons that Lindsey set forth in the Lindsey MIL, evidence of prior claims and lawsuits is inadmissible, because it may confuse the jury, because it may mislead the jury, and because it has minimal probative value.  <u>See</u> Lindsey MIL Response at 2.

Upky asserts that "[s]auce for the goose is sauce for the gander" and that, if he cannot cross examine Lindsey on this evidence, Lindsey should not be able to cross examine his expert with the evidence. Lindsey MIL Response at 3. Upky argues that, if the Court allows Lindsey to cross examine his witness with prior-claims evidence, the Court should also allow Upky to cross examine Lindsey with prior-claims evidence. See Lindsey MIL Response at 3.

Lindsey replied on April 27, 2015. See Defendant Wayne Lindsey, M.D.'s Reply in Support of Motion in Limine Regarding Evidence of Prior Claims, filed April 27, 2015 (Doc. 66) ("Lindsey MIL Reply"). Lindsey argues that Upky's assertion that the Court should allow prior-claims evidence for all witnesses or bar it for all witnesses is contrary to established precedent. Lindsey MIL Reply at 2. Lindsey contends that the Court, and other courts, have concluded that an expert witness may be cross examined on their credibility and experience. See Lindsey MIL Reply at 2 (citing Waconda v. United States, No. CIV 06-0101 JB/ACT, 2007 WL 2461624, at *6 (D.N.M. May 31, 2007)(Browning, J.); Navarro De Cosme v. Hosp. Pavia, 922 F.2d 926, 932-33 (1st Cir. 1991); Hayes v. Manchester Mem'l Hosp.. 661 A.2d 123, 125-26 (Conn. Ct. App. 1995); Irish v. Gimbel, 691 A.2d 664, 674 (Me. 1997); Underhill v. Stephenson, 756 S.W.2d 459, 461 (Ky. 1988); Willoughby v. Wilkins, 310 S.E.2d 90, 97-98 (N.C. Ct. App. 1983)). Lindsey contends that Upky's expert witness, Dr. Steven Graboff, has been sued for malpractice ten times -- including a case involving a rotator cuff repair -- and that the Court should allow Lindsey to cross examine Dr. Graboff about these prior lawsuits. See Lindsey MIL Reply at 3. Lindsey attached to the Lindsey MIL Reply a portion of Dr. Graboff's deposition, where he stated that he had been sued ten times for malpractice and that one of those suits involved a rotator cuff repair. See Deposition of Steven Graboff, M.D. at 91:8-18 (taken Mar. 10, 2015), filed April 27, 2015 (Doc. 66).

2.      **The Upky MIL No. 1**.

Upky filed the Upky MIL No. 1 on March 30, 2015.  <u>See</u> Upky MIL No. 1 at 1.  Upky requests the Court to prohibit Lindsey from presenting cumulative and repetitive evidence regarding the appropriate standard of care for medical malpractice cases, because rule 403 prohibits the admission of cumulative and repetitive evidence.  <u>See</u> Upky MIL No. 1 at 1.  Upky contends that, because Lindsey retained two expert witnesses to testify about the proper standard of care, the Court should not permit Lindsey to also testify about standard of care.  <u>See</u> Upky MIL No. 1 at 1.  Upky also contends that the Court should not permit Lindsey's experts to give duplicative opinions regarding causation or liability.  <u>See</u> Upky MIL No. 1 at 1.  Upky argues that, over the last several years, he has noticed a trend in which defendants in medical malpractice cases testify about standard of care issues that are "separate and apart from those questions which relate to the facts of their treatment."  Upky MIL No. 1 at 1-2.  He maintains that these standard-of-care opinions are almost verbatim to the defendants' expert witnesses' opinions.  <u>See</u> Upky MIL No. 1 at 2.  Upky argues that the Court should allow Lindsey to present the testimony of only one expert witness on standard-of-care issues.  <u>See</u> Upky MIL No. 1 at 2.

Lindsey responded on April 13, 2015.  <u>See</u> Defendant Wayne Lindsey, M.D.'s Response in Opposition to Plaintiff's Motion in Limine No. 1, filed April 13, 2015 (Doc. 60)("Upky MIL No. 1 Response").  Lindsey asserts that he does not intend to elicit cumulative opinion evidence from his two experts and that he does not anticipate any repetitive standard-of-care evidence. <u>See</u> Upky MIL No. 1 Response at 1.  Lindsey asserts that one of his experts will testify about his standard of care while the other expert will opine to the causation of the infection in Upky's left shoulder.  <u>See</u> Upky MIL No. 1 at 1-2.  Lindsey states that, once Upky sees his experts' reports, any concern Upky has about overlapping testimony will be dispelled.  <u>See</u> Upky MIL No. 1 at 2.

Lindsey asserts that, while he does not intend to testify whether he acted with the appropriate standard of care, the Court should delay ruling on this issue until trial, because Upky may ask him questions that require him to testify about his standard of care.  See Upky MIL No. 1 at 2.

    **3.**        **The Upky MIL No. 2.**

Upky filed the Upky MIL No. 2 on March 30, 2015.  See Upky MIL No. 2 at 1.  Upky argues that the Court should prohibit Lindsey from asking potential jurors during voir dire whether they will vote in a particular way.  See Upky MIL No. 2 at 1.  Upky argues that "the purpose of *voir dire* is to determine whether jurors can reach a verdict base[d] solely on the evidence received in Court and whether the jurors harbor any personal biases of opinions which will prohibit them from doing so."  Upky MIL No. 2 at 1 (citing State v. Gutierrez, 2011-NMSC-024, 258 P.3d 1024).  Upky contends that, in recent years, he has noticed that defense counsel in medical malpractice cases ask prospective jurors whether they would vote in the defendant's favor in certain circumstances.  See Upky MIL No. 2 at 1.  Upky contends that the Court should follow the Eleventh Judicial District Court for the State of New Mexico, by prohibiting Lindsey from asking questions in a manner that argues the case to the jury, seeks a commitment from the jury, or concerns their attitude about an anticipated instruction.  See Upky MIL No. 2 at 1-2 (citing N.M. Dist. Ct. R. Civ. P. 11-111).

Lindsey responded on April 13, 2015.  See Defendant Wayne Lindsey, M.D.'s Response in Opposition to Plaintiff's Motion in Limine No. 2, filed April 13, 2015 (Doc. 61)("Upky MIL No. 2 Response").  Lindsey requests the Court to delay ruling on what voir dire questions are permissible until trial.  Upky MIL No. 2 Response at 1.  Lindsey asserts that Upky's request to ban all hypothetical questions is out of step with the prevailing view on voir dire and is contrary to the general federal rule that parties may not ask jurors to commit themselves to a particular

verdict, but that parties may ask generic hypothetical questions.  See Upky MIL No. 2 Response at 2 (citing United States v. Fambro, 526 F.3d 836, 848 (5th Cir. 2008); Hobbs v. Lockhart, 791 F.2d 125, 129-30 (8th Cir. 1986); Garza v. Thaler, 909 F. Supp. 2d 578, 621 n.111 (W.D. Tex. 2012)).  Lindsey contends that he may question prospective jurors about hypothetical questions as long as he does not question them about the case's facts or ask them to commit to a particular decision.  See Upky MIL No. 2 Response at 2-3.

Upky replied on April 14, 2015.  See Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion in Limine No. 2, filed April 14, 2015 (Doc. 64)("Upky MIL No. 2 Reply").  He contends that voir dire is "to 'lay the predicate for both the judge's and counsel's judgment about the qualifications and impartiality of potential jurors.'"  Upky MIL No. 2 Reply at 1 (quoting United States v. Shelton, 736 F.2d 1397, 1408 (10th Cir. 1984)).  Upky also contends that the scope and extent of voir dire is left up to the district court's discretion.  See Upky MIL No. 2 Reply at 1 (citing Smith v. Vicorp, Inc., 107 F.3d 816, 817 (10th Cir. 1997)).  Upky maintains that, in recent years, he has noticed defense attorneys in medical malpractice cases ask hypothetical questions that are related to the facts of the case or that require the jurors to commit to a particular decision, assuming the defendant's version of facts is true.  See Upky MIL No. 2 Reply at 1-2.  He maintains that these questions are highly prejudicial and that he likely cannot correct the prejudice that Lindsey's attorney may create.  See Upky MIL No. 2 Reply at 2.  Upky states that the Court should, at least, require the parties to submit their proposed voir dire before trial so that each side can file objections to the proposed questions. See Upky MIL No. 2 Reply at 2.

4.      **The Upky MIL No. 3**.

Upky filed the Upky MIL No. 3 on March 30, 2015.  See Upky MIL No. 3 at 1.  Upky asks that the Court order Lindsey to not mention anything about an insurance crisis, or about the impact that medical malpractice litigation has had on physician and healthcare provider availability in New Mexico, or in any other part of the county.  See Upky MIL No. 3 at 1.  Upky argues that insurance issues are irrelevant, but that, in recent years, defendants in medical malpractice cases have argued that an adverse ruling will negatively affect the public's ability to obtain insurance, or will have a chilling effect on communities' ability to obtain and retain qualified healthcare providers.  See Upky MIL No. 3 at 1.  Lindsey responded on April 13, 2015, by stating that he does intend to discuss or introduce evidence on either of these issues and that, when a prospective juror raises an issue involving insurance, he will decline to respond and will refer the person to the Court.  See Defendant Wayne Lindsey, M.D.'s Response to Plaintiff's Motion in Limine No. 3 at 1, filed April 13, 2015 (Doc. 62)("Upky MIL No. 3 Response").

5.      **The May 13, 2015, Hearing**.

The Court held a hearing on May 13, 2015.  See Transcript of Hearing (taken May 13, 2015)("Tr.").[1]  Lindsey argued that, under rule 403, evidence of prior lawsuits and claims are unfairly prejudicial, and that jurors may vote based on the prior negligence claims rather than on whether Lindsey was negligent in this case.  See Tr. at 3:1-10 (Lawrenz).  As for evidence of prior claims against Dr. Graboff, Lindsey maintained that the evidence is different, because an expert witness' credibility is a proper cross-examination subject.  See Tr. at 3:10-25 (Lawrenz). Lindsey stated that he wanted to cross examine Dr. Graboff about the ten prior lawsuits against

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

him and about the prior lawsuit that involved a rotator cuff repair issue.  <u>See</u> Tr. at 4:1-14 (Lawrenz, Court).

Upky asserted that, in medical malpractice cases, the defendant often testifies as an expert, and that, if Lindsey testifies as an expert, he should be able to ask Lindsey about prior lawsuits and claims.  <u>See</u> Tr. at 4:19-5:6 (Lyle).  Upky contended that, if Lindsey does not testify about his expertise or credentials, then he does not intend to ask Lindsey about the prior lawsuits, but that, if Lindsey testifies about his credentials, expertise, and experience, then he should be able to cross examine Lindsey like any other expert witness.  <u>See</u> Tr. at 5:7-19 (Lyle).

The Court asked Upky for what purpose he was going to introduce the prior claims, and Upky stated that it was for the same purposes that Lindsey was seeking to introduce Dr. Graboff's prior lawsuits.  <u>See</u> Tr. at 5:20-6:1 (Lyle, Court).  Upky stated that the evidence is character evidence, which is why Lindsey should not be able to cross examine Dr. Graboff about the prior lawsuits.  <u>See</u> Tr. at 6:14-7:3 (Lyle, Court).  Upky argued that Lindsey will testify like an expert by telling the jury about his education, experience, and training in the same way that a party establishes an expert's credibility.  <u>See</u> Tr. at 7:20-8:6 (Lyle).  Upky contended that he has had a judge explain an expert witness's curriculum vitae by telling the jury about the expert and telling them to accept the expert's testimony as expert testimony.  <u>See</u> Tr. at 8:18-9:3 (Lyle).  Upky maintained that, if Lindsey testifies about his education and experience, he is being established as an expert witness, and that he should then be able to cross examine Lindsey about his prior lawsuits.  <u>See</u> Tr. at 9:3-12 (Lyle).  Lindsey responded to Upky's argument by stating that, while he is permitted to tell the jury about himself -- including his training and experience -- he will not be giving expert opinions.  <u>See</u> Tr. at 9:17-20:3 (Lawrenz).

Concerning the Upky MIL No. 1, Upky asserted that Lindsey may testify about what he did in treating Upky, but not why he did it.  See Tr. at 10:19-11:6 (Lyle).  Upky contended that, if Lindsey testifies why he did what he did in treating Upky, Lindsey will be testifying as an expert witness.  See Tr. at 11:7-12:1 (Lyle, Court).  Upky maintained that Lindsey is a fact witness and that he should testify solely about the facts.  See Tr. at 12:3-4 (Lyle).  Upky argued that Lindsey should testify only about what he did in treating him.  See Tr. at 13:10-14:2 (Lyle).  Lindsey responded by arguing that Upky's proposed limitation is overly restrictive and that the Court should wait to hear Lindsey's testimony in context before limiting it.  See Tr. at 12:13-16 (Lawrenz).  Lindsey asserted that testifying why he did something does not make him an expert witness, because he will not testify whether his conduct fell within the appropriate standard of care.  See Tr. at 12:16-13:7 (Lawrenz).

For the Upky MIL No. 2, the Court told the parties that it thought that it should wait to rule on the motion and require the parties to submit proposed voir dire questions before the pretrial conference.  See Tr. at 14:12-19 (Court).  The Court said that it was uncomfortable limiting Lindsey's voir dire without first having a concrete example of what questions he wants to ask during voir dire.  See Tr. at 14:19-15:13 (Court).  Lindsey told the Court that he agreed with requiring the parties to submit voir dire questions before trial and that he did not intend to ask any hypothetical questions that were related to the facts of the case.  See Tr. at 15:18-25 (Lawrenz, Court).  For the Upky MIL No. 3, both parties agreed that neither side would mention insurance.  See Tr. at 16:24-17:13 (Lyle, Lawrenz, Court).

The Court told the parties that it was inclined to grant the Lindsey MIL.  See Tr. at 10:4-13 (Court).  The Court said that it was inclined to deny the Upky MIL No. 1 and to permit Lindsey to testify about why he did what he did in regards to Upky's treatment.  See Tr. at

14:3-11 (Court).  The Court told the parties that they should provide the Court with their voir

dire questions before trial and that it would then rule on whether each side could ask its proposed

questions.  See Tr. at 16:15-19 (Court).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove

the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule

404(b) provides:

> **(b)**   **Crimes, Wrongs, or Other Acts.**
>
> > **(1)**   **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2)**   **Permitted Uses; Notice in a Criminal Case.**   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:
> >
> > > **(A)**   provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> > >
> > > **(B)**   do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is

based on the forbidden inference: the person did X in the past, therefore he probably has a

propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV

10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule,

however, has a number of 'exceptions'[2] -- purposes for which such evidence will be admissible." Wilson v. Jara, 2011 WL 6739166, at *5. Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b). The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston, 485 U.S. at 691-92. The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th

---

[2]In a recent en banc opinion, the United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1). See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions. That's not quite right. The text of the rule does not say that propensity evidence is inadmissible *except* when it is used to prove motive, opportunity, intent, etc. Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is *categorically* inadmissible. Fed. R. Evid. 404(b)(1). But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, *non-propensity* use. Fed. R. Evid. 404(b)(2). So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1). The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases. In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

- 14 -

Cir. 2002); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing <u>Huddleston</u>, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character.  <u>See</u> <u>United States v. Lucas</u>, 357 F.3d 599, 611 (6th Cir. 2004)(citing <u>United States v. Dudek</u>, 560 F.2d 1288 (6th Cir. 1977)); 22 C. Wright & K Graham, <u>Federal Practice and Procedure: Evidence</u> § 5239, at 428, 436-37, 439 (1991).  In <u>United States v. Phillips</u>, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged.  <u>United States v. Phillips</u>, 599 F.2d at 136.  "'[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'"  <u>United States v. Moran</u>, 503 F.3d 1135, 1145 (10th Cir. 2007)(quoting <u>United States v. Cherry</u>, 433 F.3d 698, 701 n.3 (10th Cir. 2005)).  <u>See</u> <u>United States v. Romero</u>, No. CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b) evidence almost always has some propensity evidence.").

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." <u>United States v. Morley</u>, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted).  The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for

which such evidence is offered and the inferences to be drawn therefrom." <u>United States v.</u>

<u>Youts</u>, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing <u>United States v. Kendall</u>, 766 F.2d 1426,

1436 (10th Cir. 1985)).

> The Government must articulate precisely the evidentiary hypothesis by which a
> fact of consequence may be inferred from the evidence of other acts.  In addition,
> the trial court must specifically identify the purpose for which such evidence is
> offered and a broad statement merely invoking or stating Rule 404(b) will not
> suffice.

<u>United States v. Romine</u>, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting

<u>United States v. Kendall</u>, 766 F.2d at 1436).  Rules 401 to 403 and the conditional relevancy

rules in rule 104(b) govern the applicable burden the proponent must meet to successfully offer

evidence under rule 404(b).  <u>See</u> <u>Huddleston v. United States</u>, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to

show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the

charged crime and sufficiently close in time.  <u>See</u> <u>United States v. Olivo</u>, 80 F.3d 1466, 1468-69

(10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence

about an event over one year after a defendant's arrest); <u>United States v. Bonnett</u>, 877 F.2d 1450,

1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct

was not "too remote in time and unrelated to the transactions with which he was charged").  This

similarity may be shown through "physical similarity of the acts or through the 'defendant's

indulging himself in the same state of mind in the perpetration of both the extrinsic offense and

charged offenses.'"  <u>United States v. Queen</u>, 132 F.3d 991, 996 (4th Cir. 1997)(quoting <u>United</u>

<u>States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978)).  <u>See</u> <u>United States v. Bonnett</u>, 877 F.2d

at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court,

and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more

similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982).

In United States v. Tan, 254 F.3d 1204 (10th Cir. 2001), the Honorable LeRoy C. Hansen, United States District Judge for the District of New Mexico, excluded, in a second-degree murder case, evidence that the defendant had previously been convicted of driving while intoxicated.  See 254 F.3d at 1206-07.  The murder charge rose out of the defendant driving a vehicle while intoxicated and striking a motorcyclist with his vehicle.  See 245 F.3d at 1206.  Judge Hansen concluded that evidence of the other convictions would show only that the defendant had a propensity for drunk driving and would be more prejudicial than probative.  See 254 F.3d at 1207.  The Tenth Circuit reversed.  In an opinion that the Honorable Stephen H. Anderson, United States Circuit Judge for the Tenth Circuit, wrote, and Judges Seymour and Kelly joined, the Tenth Circuit held that, because second-degree murder requires proof of malice, the prior convictions were probative to the proper purpose of proving malice or intent, reasoning that a person who is convicted of drunk driving is more aware of the substantial risks and harm that it can cause to others.  See 254 F.3d at 1210-11.[3]

---

[3]Before United States v. Gomez, the Seventh Circuit used a four-part test to determine the admissibility of 404(b) evidence; the test included:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

United States v. Gomez, 763 F.3d at 852 (quoting United States v. Zapata, 871 F.2d 616, 620 (7th Cir. 1989), abrogated by United States v. Gomez, 763 F.3d at 845). In United States v. Gomez the Seventh Circuit abandoned its traditional four-part test in favor of a "straightforward rules-based approach" that it articulated to "produce clarity and better practice in applying the relevant rules of evidence." 763 F.3d at 853. One of the main changes in the Seventh Circuit's approach is that the relevance, similarity, and timing of the other act depends on the particular theory of admissibility. See 763 F.3d at 854. The Seventh Circuit also focused on the purpose of the other-act evidence to ensure that its relevance does not require a propensity inference. See 763 F.3d at 856 ("[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose -- or more specifically, how the evidence is relevant without relying on a propensity inference." (emphasis in original)). For rule 403's balancing test, the Seventh Circuit focused on how contested an issue is to determine how relevant the other-act evidence is to the issue and to the case: the more disputed the issue, the more relevant the evidence. See 763 F.3d at 859-60. For example, for general intent crimes, evidence showing intent is likely irrelevant, unless the defendant puts intent at issue, but, for specific intent crimes, other-act evidence is more relevant to showing intent. See 763 F.3d at 857-59.

> [W]hen intent is not 'at issue' -- when the defendant is charged with a general-intent crime *and* does not meaningfully dispute intent -- other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice. In contrast, when intent *is* "at issue" -- in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime -- other-act evidence *may* be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice.

763 F.3d at 859 (emphasis in original). Finally, the Seventh Circuit held that district courts should draft customized jury instructions for the other-act evidence, and that they should hesitate before giving a limiting instruction unless one of the parties requests one. See 763 F.3d at 860-61.

The Tenth Circuit has consistently used a four-part test that is similar, but slightly different than the Seventh Circuit's, and the Tenth Circuit's test provides that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762. Because "only the en banc court can overrule the judgment of a prior panel," United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc., 207 F.3d 1193, 1198 (10th Cir. 2000), this four-part test binds the Tenth

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."    Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).

---

Circuit -- and, most importantly here, all district courts within the Tenth Circuit -- until the Tenth Circuit, sitting en banc, rules otherwise, see Stephen A. Saltzburg, Professor, George Washington University Law School, The Second Best Federal Bar Seminar Ever: Evidence (May 1, 2015)(noting that United States Courts of Appeals must go en banc to change their four-part tests).  Moreover, the Tenth Circuit, and every United States Court of Appeals with a four-part test -- derived its test from the "four-step framework" that the Supreme Court set forth in Huddleston v. United States.    United States v. Record, 873 F.2d 1363, 1374-75 (10th Cir. 1989) ("Further, Huddleston provides a four-step framework for avoiding such prejudice, which will greatly simplify the task of a trial court in this circuit, as well as a reviewing court, in analyzing the admission of Rule 404(b) evidence.").  In Huddleston v. United States, the Supreme Court listed four rules of evidence that protect defendants from being unfairly prejudiced by evidence introduced under rule 404(b):

> We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b).  We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 -- as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Huddleston v. United States, 485 U.S. at 691-92 (citations omitted)(footnote omitted).

While the Seventh Circuit abandoned its old four-part test, its new "rules-based approach" still considers each rule of evidence that the Supreme Court says protects litigations from unfair prejudice.  See United States v. Gomez, 763 F.3d at 853-61 (applying rules 104, 105, 401, 402, 403, and 404(b) of the Federal Rules of Evidence).  Indeed, the Seventh Circuit described its change as "less a substantive modification than a shift in paradigm" to "produce clarity and better practice in applying the relevant rules of evidence."  763 F.3d at 853.  Because the Court of Appeals cannot abandon a Supreme Court case, any change the Tenth Circuit makes to its current four-part test -- which would require the en banc court -- must still apply the four factors -- i.e., the rules of evidence -- from Huddleston v. United States, even if the factors are not applied in the same mechanical fashion that the current test requires.

"Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).   "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"   United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).   Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.   See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d

1262, 1274 (10th Cir. 2000).  The "[e]xclusion of otherwise admissible evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'"  United States v. Smalls, 752 F.3d 1227, 1238 n. 4 (10th Cir. 2014)(quoting United States v. Tan, 254 F.3d at 1211).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (emphasis in original)(quoting Fed. R. Evid. 403 advisory committee's notes).

## LAW REGARDING EXPERT TESTIMONY

"Since the Supreme Court of the United States decided <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>[ 509 U.S. 579 (1993)], trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." <u>United States v. Gutierrez-Castro</u>, 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011)(Browning, J.). "The Court now must not only decide whether the expert is qualified to testify, but, under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, whether the opinion testimony is the product of a reliable methodology." <u>United States v. Gutierrez-Castro</u>, 805 F. Supp. 2d at 1224. "<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> requires a court to scrutinize the proffered expert's reasoning to determine if that reasoning is sound." <u>United States v. Gutierrez-Castro</u>, 805 F. Supp. 2d at 1224.

### 1.    <u>Rule 702</u>.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)**    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)**     the testimony is based on sufficient facts or data;

**(c)**    the testimony is the product of reliable principles and methods; and

**(d)**    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 thus requires the trial court to "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>United States v. Muldrow</u>, 19 F.3d

1332, 1337 (10th Cir. 1994).  Rule 702 uses a liberal definition of "expert."  Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules ("[W]ithin the scope of this rule are not only experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").   An expert is "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004).  The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met.  See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005) (Browning, J.)(citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by knowledge, skill, experience, training, or education and . . . the expert . . . should not be required to satisfy an overly narrow test of his own qualifications."  Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974)(internal quotation marks omitted).  Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Electric Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

### 2.   The Standard in Daubert v. Merrell Dow Pharm., Inc.

In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of

the case, i.e., whether it is helpful to the trier of fact.  See Daubert v. Merrell Dow Pharm., Inc.,

509 U.S. at 594-95; Witherspoon v. Navajo Ref. Co., LP, No. CIV 03-1160 BB/LAM, 2005 WL

5988649, at *2 (D.N.M. July 18, 2005)(Black, J.)(citing Dodge v. Cotter Corp., 328 F.3d 1212,

1221 (10th Cir. 2003)).  The Supreme Court articulated a non-exclusive list of factors that weigh

into a district court's first-step reliability determination, including: (i) whether the method has

been tested; (ii) whether the method has been published and subject to peer review; (iii) the error

rate; (iv) the existence of standards and whether the witness applied them in the present case; and

(v) whether the witness' method is generally accepted as reliable in the relevant medical and

scientific community.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 594-95.  The court is

also to consider whether the witness' conclusion represents an "unfounded extrapolation" from

the data; whether the witness has adequately accounted for alternative explanations for the effect

at issue; whether the opinion was reached for the purposes of litigation or as the result of

independent studies; or whether it unduly relies on anecdotal evidence.  See Witherspoon v.

Navajo Ref. Co., LP, 2005 WL 5988649 at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146

(1997)).  The Tenth Circuit stated the applicable standard in Norris v. Baxter Healthcare Corp.:

> Rule 702 requires the district court to "ensure that any and all scientific testimony
> or evidence is not only relevant, but reliable."  [Bitler v. A.O. Smith Corp., 391
> F.3d 1114, 1120 (10th Cir. 2004)](quoting Daubert, 509 U.S. at 589 . . .).  This
> obligation involves a two-part inquiry.  Id.  "[A] district court must [first]
> determine if the expert's proffered testimony . . . has 'a reliable basis in the
> knowledge and experience of his [or her] discipline.'"  Id. (quoting Daubert, 509
> U.S. at 592 . . . .).  In making this determination, the district court must decide
> "whether the reasoning or methodology underlying the testimony is scientifically
> valid. . . ."  Id.  (quoting Daubert, 509 U.S. at 592-93 . . .).  Second, the district
> court must further inquire into whether proposed testimony is sufficiently
> "relevant to the task at hand."  Daubert, 509 U.S. at 597 . . . .

397 F.3d 878, 883-84 (10th Cir. 2005)(footnote omitted).  "The second inquiry is related to the

first.  Under the relevance prong of the Daubert analysis, the court must ensure that the proposed

expert testimony logically advances a material aspect of the case . . . .  The evidence must have a valid scientific connection to the disputed facts in the case."  Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2 (citing Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995)(on remand from the Supreme Court); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 591).  If the expert's proffered testimony fails on the first prong, the court does not reach the second prong.  See Norris v. Baxter Healthcare Corp., 397 F.3d at 884.  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court expanded the rules under Daubert v. Merrell Dow Pharmaceuticals, Inc., to non-scientific expert testimony.  See 526 U.S. at 141 ("We conclude that Daubert's general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").  The Supreme Court recognized in Kumho Tire Co. v. Carmichael that the factors from Daubert v. Merrell Dow Pharmaceuticals, Inc. will not apply to all cases:

> Our emphasis on the word 'may' thus reflects Daubert's description of the Rule 702 inquiry as a flexible one.  Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test.  And Daubert adds that the gatekeeping inquiry must be tied to the facts of a particular case.

Kumho Tire Co. v. Carmichael, 526 U.S. at 150 (internal quotation marks omitted).

In conducting its review under Daubert v. Merrell Dow Pharmaceuticals, Inc., the court must focus generally on "principles and methodologies, and not on the conclusions generated." Armeanu v. Bridgestone/Firestone N. Am., Tire, LLC, No. CIV 05-0619 JB/DJS, 2006 WL 4060665, at *11 (D.N.M. Sept. 26, 2006)(Browning, J.)(citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 595).  "Despite this focus on methodology, an expert's conclusions are not immune from scrutiny and the court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Armeanu v. Bridgestone/Firestone N. Am., Tire,

LLC, 2006 WL 4060665, at *11 (alterations omitted)(internal quotation marks omitted).  The

proponent of the expert's opinion testimony bears the burden of establishing that the expert is

qualified, that the methodology he or she uses to support his or her opinions is reliable, and that

his or her opinion fits the facts of the case and thus will be helpful to the jury.  See Norris v.

Baxter Healthcare Corp., 397 F.3d at 881.  The Tenth Circuit noted in Hollander v. Sandoz

Pharmaceuticals Corp., 289 F.3d 1193 (10th Cir. 2002):

> Because the district court has discretion to consider a variety of factors in
> assessing reliability under Daubert, and because, in light of that discretion, there
> is not an extensive body of appellate case law defining the criteria for assessing
> scientific reliability, we are limited to determining whether the district court's
> application of the Daubert manifests a clear error of judgment or exceeds the
> bounds of permissible choice in the circumstances. . . .  Thus, when coupled with
> this deferential standard of review, Daubert's effort to safeguard the reliability of
> science in the courtroom may produce a counter-intuitive effect: different courts
> relying on the essentially the same science may reach different results.

289 F.3d at 1206.  The United States Court of Appeals for the Ninth Circuit noted in Claar v.

Burlington Northern Railroad Co., 29 F.3d 499 (9th Cir. 1994):

> Coming to a firm conclusion first and then doing research to support it is the
> antithesis of this method.  Certainly, scientists may form initial tentative
> hypotheses.  However, scientists whose conviction about the ultimate conclusion
> of their research is so firm that they are willing to aver under oath that it is correct
> prior to performing the necessary validating tests could properly be viewed by the
> district court as lacking the objectivity that is the hallmark of the scientific
> method.

29 F.3d at 502-503 (citation omitted).

> Once reliability is established, however, it is still within the district court's
> discretion to determine whether expert testimony will be helpful to the trier of
> fact.  In making that determination, the court should consider, among other
> factors, the testimony's relevance, the jurors' common knowledge and experience,
> and whether the expert's testimony may usurp the jury's primary role as the
> evaluator of evidence.

Ram v. N.M. Dep't of Env't, No. CIV 05-1083 JB/WPL, 2006 WL 4079623, at *10 (Dec. 15, 2006)(Browning, J.)(citing United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)).

An untested hypothesis does not provide a scientific basis to support an expert opinion. See Norris v. Baxter Healthcare Corp., 397 F.3d at 887 ("[A]t best, silicone-associated connective tissue disease is an untested hypothesis.  At worst, the link has been tested and found to be untenable.  Therefore, there is no scientific basis for any expert testimony as to its specific presence in Plaintiff."); In re Breast Implant Litig., 11 F. Supp. 2d 1217, 1228 (D. Colo. 1998)(Sparr, J.)("An untested hypothesis cannot be a scientifically reliable basis for an opinion on causation.").  A court is not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).   See Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1209 (10th Cir. 2002)(noting a lack of similarity between animal studies and human studies); Tyler v. Sterling Drug, Inc., 19 F. Supp. 2d 1239, 1244 (N.D. Okla. 1998)("Test results on animals are not necessarily reliable evidence of the same reaction in humans.").  Courts have excluded experts' opinions when the experts depart from their own established standards.  See Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1213 (10th Cir. 2004)("The district court noted that [the expert]'s opinion did not meet the standards of fire investigation [the expert] himself professed he adhered to."); Magdaleno v. Burlington N. R.R. Co., 5 F. Supp. 2d 899, 905 (D. Colo. 1998)("In sum, [the expert]'s methodology is not consistent with the methodologies described by the authors and experts whom [the expert] identifies as key authorities in his field.").

3.    **Necessity of Evaluating an Issue Under** Daubert v. Merrell Dow Pharmaceuticals, Inc.

The restrictions in Daubert v. Merrell Dow Pharmaceuticals, Inc. apply to both "novel" expert testimony and "well-established propositions."  509 U.S. at 593 n.11 ("Although the Frye[4] decision itself focused exclusively on 'novel' scientific techniques, we do not read the requirements of Rule 702 to apply specially or exclusively to unconventional evidence.").  "Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 593 n.11.  "Indeed, theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics, properly are subject to judicial notice under Federal Rule of Evidence 201."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 593 n.11.

"[W]hen experts employ established methods in their usual manner, a district court need not take issue under Daubert . . . ."  Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 780 (10th Cir. 2009).  "[H]owever, where established methods are employed in new ways, a district court may require further indications of reliability."  Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780.  Whether courts have accepted theories underlying an expert's opinion is a relevant consideration in determining whether expert testimony is reliable.  See Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780 ("The case law indicates that the courts are not unfamiliar with the [polymerase chain reaction] methodology, and in fact some courts have indicated their acceptance of it.").

---

[4]Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), superseded by rule Fed. R. Evid. 702, held that, for an expert opinion to be admissible, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."  Frye v. United States, 293 F. at 1014.

4.     __Expert Testimony Bolstering Other Witnesses' Credibility.__

"The credibility of witnesses is generally not an appropriate subject for expert testimony." United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993). See United States v. Ganadonegro, 805 F. Supp. 2d 1188, 1213 (D.N.M. 2011)(Browning, J.)(excluding expert testimony on whether defendant's confession was credible).

> There are several reasons for the prohibition against expert testimony on other witness' credibility. Such testimony: (1) "usurps a critical function of the jury"; (2) "is not helpful to the jury, which can make its own determination of credibility"; and (3) when provided by "impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury."

United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014)(quoting United States v. Toledo, 985 F.2d at 1470). The bar on credibility-bolstering expert testimony is grounded in a number of evidentiary rules. See United States v. Charley, 189 F.3d 1251, 1267 n.21 (10th Cir. 1999)(en banc). Expert testimony that vouches for the credibility of other witnesses lacks "relevance [under rule 401] and would not 'assist the trier of fact as required by Rule 702.'" United States v. Adams, 271 F.3d 1236, 1246 (10th Cir. 2001)(quoting United States v. Charley, 189 F.3d at 1267). See United States v. Harry, No. CR 10-1915 JB, 2014 WL 1949993, at *38 (D.N.M. May 5, 2014)(Browning, J.)(concluding that expert's testimony was not relevant if expert testified that witness' demeanor suggested that the witness was not subjected to a sexual assault, because the testimony impermissibly went to the witness' credibility).

> Courts have also held that testimony which vouches for the credibility of a witness violates other evidentiary rules, such as Rule 608(a)(1) or Rule 403. Some courts have held that, although Rule 608(a)(1) "permits testimony concerning a witness's general character or reputation for truthfulness," it "prohibits any testimony as to a witness's truthfulness on a particular occasion." State v. Rimmasch, 775 P.2d 388, 391 (Utah 1989)(construing Utah R. Evid. 608); see also United States v. Azure, 801 F.2d 336, 341 (8th Cir. 1986); State v. Wood, 194 W. Va. 525, 460 S.E. 2d 771, 778 (W. Va. 1995)(construing W. Va. R. Evid. 608); People v. Koon, 713 P.2d 410, 412 (Colo. Ct. App. 1985)(construing Colo. R. Evid. 608). And at least one court has held, in a sexual

abuse case, that testimony that bolsters the credibility of the complaining witness violates Rule 403's balancing test.  United States v. Funds Held in the Name or for the Benefit of John Hugh Wetterer, 991 F. Supp. 112, 120-21 (E.D.N.Y. 1998).

United States v. Charley, 189 F.3d at 1267 n.21.  See United States v. Benally, 541 F.3d 990, 995 (10th Cir. 2008)(affirming district court's exclusion of vouching testimony under rule 403's balancing test).  The bar on bolstering a witness' testimony only extends to expert testimony concerning the witness' credibility and not to expert testimony that is consistent with another witness' testimony.  See United States v. Charley, 189 F.3d at 1264.  In United States v. Charley, the Tenth Circuit held, en banc, that the district court did not err in permitting an expert witness to testify that the actions and symptoms of two girls were consistent with those of a sexual assault victim.  See 189 F.3d at 1264.  The expert's testimony was consistent with the two girls' testimony that they had been sexually assaulted.  See 189 F.3d at 1258.  The Tenth Circuit held, however, that the district court erred in permitting a psychiatrist to testify that he believed the girls were sexually assaulted, based on statements the girls made to the psychiatrist, because the testimony "was essentially vouching for [the girls'] truthfulness."  189 F.3d at 1267.

In United States v. Chaco, 801 F. Supp. 2d 1200 (D.N.M. 2011)(Browning, J.), the Court permitted a doctor to testify that an examination of a sexual assault victim did not show any signs of sexual assault but that the majority of physical examinations on sexually assaulted prepubescent girls result in normal findings.  See 801 F. Supp. 2d at 1216.  The Court permitted the doctor to testify that the examination, which resulted in no evidence of sexual abuse, was still consistent with the victim being sexually abused.  See 801 F. Supp. 2d at 1216.  The Court excluded, however, testimony from the doctor that the victim had been sexually assaulted, because the doctor knew that the victim was sexually assaulted based on statements that the victim made to the doctor.  See 801 F. Supp. 2d at 1216.  The Court reasoned that permitting the

doctor to testify that the victim had been sexually assaulted would serve to impermissibly vouch for the witness' credibility.  See 801 F. Supp. 2d at 1216 (citing United States v. Velarde, 214 F.3d 1204, 1211 n.6 (10th Cir. 2000)).   The Court concluded, however, that the doctor's testimony that the examination results were consistent with that of a sexual assault victim was based on the doctor's knowledge and experience, and was, thus, permissible expert testimony. See United States v. Chaco, 801 F. Supp. 2d at 1216.

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause."  Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2012 WL 1372273, at 4 (D.N.M. Apr. 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)).  "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse."  United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983).  See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination.").  "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general."  United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980).

## LAW REGARDING MENTION OF LIABILITY INSURANCE

Under rule 411 of the Federal Rules of Evidence, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."  Fed. R. Evid. 411.  See Black v. Hieb's Enters., Inc., 805 F.2d 360, 365 (10th Cir. 1986).  The rule is premised on the general "feeling that knowledge of the

presence or absence of liability insurance would induce juries to decide cases on improper grounds." Fed. R. Evid. 411 advisory committee's note. Evidence of insurance may be admissible, however, "when other issues, such as ownership, control, bias, or prejudice are involved." Palmer v. Krueger, 897 F.2d 1529, 1537 (10th Cir. 1990)(citing Fed. R. Evid. 411). While courts should be careful to proscribe references to liability insurance, unexpected, inadvertent references to insurance "are not generally grounds for mistrial or reversal." Rios v. Bigler, 67 F.3d 1543, 1550 (10th Cir. 1995)(quoting Zanetti Bus Lines, Inc. v. Hurd, 320 F.2d 123, 129 (10th Cir. 1963))(internal quotation marks omitted).

## ANALYSIS

The Court will: (i) grant the Lindsey MIL; (ii) deny the Upky MIL No. 1; (iii) grant in part and deny in part the Upky MIL No. 2; and (iv) grant the Upky MIL No. 3. Unless Lindsey gives expert testimony, Upky may not introduce evidence of other lawsuits or claims against Lindsey, because such evidence is not introduced for a proper purpose. Lindsey may, however, introduce evidence of prior lawsuits against Dr. Graboff, because, by testifying as an expert, Dr. Graboff places his credibility, expertise, competency, and experience at issue. Because some hypothetical questions are permissible during voir dire, the Court will deny the Upky MIL No. 2 in part and will order each side to file with the Court proposed voir dire questions, so that each side can object to specific, proposed questions. Finally, Upky and Lindsey agree that neither side will discuss insurance or the effect that litigation has on healthcare availability. The Court will, thus, grant the Upky MIL No. 3.

## I.   UPKY MAY NOT ASK LINDSEY ABOUT ANY PRIOR CLAIMS OR LAWSUITS AGAINST HIM.

Upky may not ask Lindsey about any prior claims or lawsuits against him. Rule 404(b) requires evidence of other acts to be admitted for a proper purpose. See Fed. R. Evid. 404(b)(1).

At the hearing, Upky stated that the purpose of the prior lawsuits was the same as Lindsey's purpose in introducing evidence of Dr. Graboff's prior lawsuits, and later Upky said that the purpose was to show character.  See Tr. at 5:20-7:3 (Lyle, Court).  The Court agrees that evidence of Lindsey's prior lawsuits would constitute impermissible character evidence, but disagrees that Lindsey is introducing Dr. Graboff's prior lawsuits as character evidence.

Upky's argument is not that the evidence is inherently admissible or inherently inadmissible, but that, if the Court prohibits him from using the evidence against Lindsey, it should also prohibit Lindsey from using the evidence against Dr. Graboff.  See Lindsey MIL Response at 2.  There is, however, a difference between an expert witness -- who is going to testify about the proper standard of care and about whether the defendant's actions conformed with that standard -- and a defendant -- who is being sued for negligence.  A party must establish an expert witness' expertise by showing the jury and the Court, among other things, the expert's experience, credentials, and training.  This evidence is not for the purpose of bolstering the expert's credibility -- although it might have that side effect -- but to suggest to the jury that it should accept the expert's testimony as true.  If a medical intern who recently graduated from medical school testifies about proper standards of care, and a doctor with over forty years of experience testifies about the same subject, the seasoned doctor's testimony is likely more credible than the intern's.  Similarly, if a doctor with an exemplary record and a number of awards testifies about proper standards of care, and a doctor who has been reprimanded and sued many times testifies, the doctor with the exemplary record's testimony is likely more credible.  This credibility disparity is not based on the fact that more seasoned doctors with exemplary records are more truthful -- although the Court recognizes that this conclusion may be an unintended side effect of this evidence -- but instead on the possibility that a seasoned doctor

without any blemishes on his or her record likely better understands what the proper standard of care is and when it is breached.   It is the subject matter of the expert's testimony that makes the expert's experiences, credentials, and record relevant.

For this reason, the Court differentiates between expert witnesses and fact witnesses when it comes to the admissibility of other-act evidence, such as lawsuits against the witness.  If evidence of prior lawsuits is introduced against a fact witness, including the defendant, it must be introduced for a proper purpose under rule 404(b).  Unless the witness' expertise and experience are at issue in the case, evidence of other lawsuits is likely inadmissible.  On the other hand, a standard-of-care expert witness' experience and expertise is almost always at issue in the case. That is why, in Waconda v. United States, the Court permitted the defendant to introduce evidence of prior lawsuits against the plaintiff's expert witness, but prohibited the plaintiff from introducing evidence of other lawsuits that had been filed against the defendant.  See 2007 WL 24616124, at *6.  There, the plaintiff made essentially the same argument as Upky -- that if the Court excludes evidence of the defendant's prior lawsuits, it should also exclude any evidence of prior lawsuits against the plaintiff's experts.  See 2007 WL 2461624, at *6.  The Court held that rule 404(b) barred evidence of prior lawsuits against the defendant -- because the plaintiff failed to articulate a proper purpose for the evidence -- but that similar evidence was permissible against the plaintiff's expert.  See 2007 WL 2461624, at *6.

> Consistent with rules 403 and 404(b), the Court will exclude evidence of [the defendant's] other medical malpractice lawsuit.  The Court notes that [the plaintiff] has not articulated a proper purpose for the admission of this evidence, and the Court does not see how the evidence reflects "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  The Court believes that evidence related to the other case against [the defendant] would be highly prejudicial and has little probative value with respect to the matters at issue in this case other than to suggest [the defendant] has a propensity for negligence.

On the other hand, the Court will admit evidence regarding other medical malpractice lawsuits that have been brought against [the plaintiff's] experts. The Court believes that, when an individual testifies as an expert, they necessarily open themselves up to an evaluation of their credibility and experience. The Court will not restrict [the defendant's] right to impeach [the plaintiff's] experts' credibility merely because it has excluded evidence of another medical malpractice action against [the defendant].

2007 WL 2461624, at *6.

While courts are fairly unanimous that evidence of prior lawsuits should not be introduced against a defendant in a medical malpractice case, see, e.g., Potvin v. City of Westland Police Dep't, No. CIV 05-70291, 2007 WL 1975045, at *2-3 (E.D. Mich. July 2, 2007)(Borman, J.), they are split over whether evidence of prior lawsuits may be introduced against an expert witness. A number of courts hold that evidence of prior lawsuits is relevant to the expert's credibility, competency, expertise, and bias. See, e.g., Navarro de Cosme v. Hosp. Pavia, 922 F.2d at 932-33; Hayes v. Manchester Mem'l Hosp.. 661 A.2d at 125-26; Irish v. Gimbel, 691 A.2d at 674; Underhill v. Stephenson, 756 S.W.2d at 461; Willoughby v. Wilkins, 310 S.E.2d at 97-98; Underhill v. Stephenson, 756 S.W.2d 459, 461 (Ky. 1988); Wischmeyer v. Schanz, 536 N.W.2d 760, 764-65 (Mich. 1995). Other courts have held that evidence of lawsuits against an expert witness is irrelevant to the witness' testimony. See, e.g., Manhardt v. Tamton, 832 So. 2d 129, 131-32 (Fla. Dist. Ct. App. 2002); Kruszewski v. Holz, 290 A.2d 534, 440 (Md. 1972). The courts that excluded the evidence concluded either that evidence of prior lawsuits "constituted an improper attack on [the expert's] credibility," Manhardt v. Tamton, 832 So. 2d at 131-32 (citing Tormey v. Trout, 748 So. 2d 303, 306 (Fla. Dist. Ct. App. 1999)("Evidence of particular acts of misconduct may not be introduced to impeach the credibility of a witness. Inquiries into a witness' character must go only to the witness' reputation for truth and veracity." (citation omitted))), or that the evidence was merely cumulative of other evidence showing the

expert's bias, see Kruszewski v. Holz, 290 A.2d at 440. The Court concludes that these courts' conclusions resulted in the improper exclusion of relevant, probative evidence.

If evidence of prior lawsuits were introduced merely to attack an expert's credibility -- i.e., to show that the expert is untruthful -- then the evidence might not have much relevancy, because a prior malpractice lawsuit does not necessarily concern an act that is probative of untruthfulness. Cf. Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, 2009 WL 1325440, at *6 (D.N.M. Apr. 6, 2009)(Browning, J.)(noting that, if an act "is not probative of untruthfulness," it is "not a proper subject for cross-examination under rule 608(b)"). Prior-lawsuit evidence is not, however, introduced to show that the expert is untruthful, but, instead, to show that the expert lacks the requisite expertise and competence to give expert opinions. See Wischmeyer v. Schanz, 536 N.W.2d 765 (stating that prior lawsuits are "relevant to the expert's competency"). "Because expert testimony is admitted to assist the trier of fact, it [is] imperative that opposing counsel be afforded the opportunity to cross-examine [the expert] to expose the weaknesses in his [or her] knowledge, skill, experience, training, or education." Wischmeyer v. Schanz, 536 N.W.2d 766. Because an expert's credentials, expertise, competency, and experience are at issue, evidence of prior lawsuits against an expert is relevant and admissible in a medical malpractice case.

Upky argued at the hearing that, if Lindsey testifies as an expert, he should be able to ask Lindsey about prior lawsuits against him. See Tr. at 4:19-5:19 (Lyle). Some courts have held that other-act evidence may be admissible against a defendant in a medical malpractice case when the defendant testifies as an expert witness. See M.B. v. S.P., 124 So. 3d 358, 361-62 (Fla. Dist. Ct. App. 2013)(holding that evidence that defendant failed his board certification exam was not relevant, but may have been relevant if the defendant testified as an expert witness); Gipson

v. Younes, 724 So. 2d 530, 532 (Ala. Civ. App. 1998)(same).  Lindsey represented to the Court, however, that he will not be giving expert opinions.  See Tr. at 9:17-18 (Lawrenz).  Upky asserted that, for Lindsey to not testify as an expert witness, he cannot testify about his credentials -- such as where he went to medical school, whether he taught at a medical school, and what his experiences are -- see Tr. at 4:19-5:13 (Lyle), and he cannot testify why he did what he did in treating Upky, see Tr. at 10:19-11:18 (Lyle).  Upky is mistaken.  Lindsey does not automatically transform into an expert witness by telling the jury about himself, which includes telling the jury about his background, education, and experience, and Lindsey does not become an expert by testifying about the facts of the case and about his reasons for doing what he did. Witnesses, especially parties, often begin their testimony by telling the jury about themselves -- who they are, where they live, what they do, where they went to school, and how long they have practiced their profession.  This background testimony does not transform the witness into an expert, even if an expert may give similar testimony to establish his or her expertise.

Similarly, Lindsey does not become an expert by merely telling the jury why he did what he did in treating Upky.  Why a person made certain decisions does not make him or her an expert.  For example, if an experienced and accomplished truck driver is in an accident, the truck driver may testify why he took the actions that he did without becoming an expert witness.  The driver is free to tell the jury his reasons for turning the truck in a certain manner, for applying the brakes, or for not applying the brakes.  This explanation is not expert testimony, even if the truck driver is so qualified that he may give expert testimony.  Similarly, Lindsey may testify why he treated Upky in the manner that he did without giving expert testimony.  If Lindsey goes beyond this testimony, and testifies about what the proper standard of care is and whether his conduct fell within this standard of care, Lindsey may be giving expert testimony.  Merely stating his

background and the reasons why he treated Upky in a certain manner, however, does not make him an expert witness.[5]

Because Upky has failed to present a proper purpose for presenting evidence of prior lawsuits against Lindsey, and because Lindsey has represented to the Court that he will not give expert testimony, the Court will grant the Lindsey MIL, and will prohibit Upky from introducing evidence of other claims or lawsuits against Lindsey. The Court will not place such limitations on the questioning of Dr. Graboff. Dr. Graboff is giving expert testimony, and, as such, his competency, expertise, and experience are at issue in the case.

## II. THE COURT WILL DENY THE UPKY MIL NO. 1 WITHOUT PREJUDICE TO HIM RENEWING IT AT TRIAL IN A MORE CONCRETE CONTEXT.

The Court will deny the Upky MIL No. 1 without prejudice. Upky asks the Court to prohibit Lindsey from offering cumulative expert testimony, by Lindsey's two experts or by Lindsey himself. See Upky MIL No. 1 at 1-2. Lindsey asserts that one of his experts, Dr. Tom Carlsen, will give expert testimony concerning Lindsey's standard of care, while Lindsey's other expert, Dr. Carl Vartian, will give expert testimony concerning the cause of the infection in Upky's left shoulder. See Upky MIL Response at 1-2. Additionally, at the hearing, Lindsey stated that he will not be giving expert testimony at trial. See Tr. at 9:17-18 (Lawrenz). Based on Lindsey's representations that his experts will testify about different subjects and that he will not give expert testimony, the Court will deny the Upky MIL No. 1 without prejudice to him

---

[5]A clever attorney may try to find a loophole in this rule by asking, on cross examination, what standard of care the defendant thinks a doctor should use and whether the defendant acted within this standard of care. Once the defendant answers these questions, the attorney may then question the defendant about prior lawsuits against him or her. The Court will not allow such gamesmanship. If a defendant-physician gives expert testimony, the defendant may expose himself or herself to the risk of questions concerning prior lawsuits. If, however, the plaintiff's attorney purposely elicits such testimony on cross examination, the attorney may not then come back with evidence of prior lawsuits.

renewing it at trial in a more concrete context.  At trial, if Dr. Carlsen and Dr. Vartian begin to give cumulative testimony on the same subject, or if Lindsey begins to testify as an expert, Upky may object, and the Court will consider his objections one question at a time.  Until then, the Court will not limit, pretrial Lindsey's, Dr. Carlsen's, or Dr. Vartian's testimony.

## III.  THE COURT WILL ORDER UPKY AND LINDSEY TO FILE WITH THE COURT THEIR PROPOSED VOIR DIRE QUESTIONS, AND TO MAKE INDIVIDUAL OBJECTIONS TO THE SUBMITTED QUESTIONS.

The Court will order Upky and Lindsey to file with the Court their proposed voir dire questions, and to make individual objections to the submitted questions.  Upky argues that the Court should prohibit Lindsey from asking the prospective jurors hypothetical questions that are similar to the case.  See Upky MIL No. 2.  The Court believes that some hypothetical questions are inappropriate for voir dire while others are permissible.  The question's permissibility depends on the wording of the specific question and the cases' facts.

"*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."  Mu'Min v. Virginia, 500 U.S. 415, 431 (1991).  Courts draw the line between permissible hypotheticals and impermissible ones based on whether the question furthers one of these two purposes or whether the question is an attempt by the party to get the jury to commit to a certain verdict.  For example, a hypothetical question is permissible if it attempts to see how the potential jurors can evaluate evidence that is admitted under a hearsay exception, see Donohue v. Lempke, No. CIV 09-3890 SJF, 2012 WL 2930204, at *14-15 (E.D.N.Y. July 13, 2012)("Rather, it appears that the prosecutor was only attempting to inquire whether a prospective juror could evaluate evidence admitted under the 'excited utterance' exception to the hearsay rule."), but a hypothetical is inappropriate if it attempts to discern how the jurors will vote if the evidence plays out in the

way the party expects it to play out, see United States v. Fambro, 526 F.3d 836, 848 (5th Cir. 2008)(noting that a hypothetical question containing facts that "were virtually identical to the central facts [the prosecutor] would later introduce at trial" was "highly suspect," but that any error was not plain error). The Court will, thus, permit Lindsey to ask hypothetical questions during voir dire, but not questions that require the potential jurors to commit to a certain outcome in the case. As of now, the Court does not know what questions Lindsey wishes to ask. Accordingly, the Court will order the parties to submit to the Court proposed voir dire questions, so that each side can state specific objections to specific questions. This method will allow the Court to more thoroughly analyze the permissibility of each question in a concrete context without overly burdening either side's voir dire.

## IV.   **NEITHER PARTY MAY DISCUSS INSURANCE.**

Upky moves for the Court to prohibit Lindsey from referencing insurance or the effect that lawsuits may have on the availability of healthcare. See Upky MIL No. 3 at 1-2. Lindsey states that he does not intend to mention either issue at trial. See Upky MIL No. 3 Response at 1. At the hearing, both parties agreed that they should not mention insurance. See Tr. at 16:24-17:22 (Lyle, Lawrenz, Court). Consequently, because each side agreed that neither side should discuss insurance or the effect that litigation has on healthcare availability, the Court will grant the Upky MIL No. 3.

**IT IS ORDERED** that: (i) the Defendant Wayne Lindsey, M.D.'s Motion in Limine Regarding Evidence of Prior Claims, filed March 30, 2015 (Doc. 53), is granted; (ii) the Motion in Limine No. 1, filed March 30, 2015 (Doc. 54), is denied without prejudice to renew at trial; (iii) the Motion in Limine No. 2, filed March 30, 2015 (Doc. 55), is granted in part and denied in part; and (iv) the Motion in Limine No. 3, filed March 30, 2015 (Doc. 56), is granted. Both

parties are ordered to file with the Court proposed questions they wish to ask the jury during voir dire.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James P. Lyle
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

William P. Slattery
Zachary T. Taylor
Hinkle Shanor LLP
Santa Fe, New Mexico

     *Attorneys for the Defendant*